ALBERT R. McGOVERN AND THERESA C. McGOVERN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 641–62. Filed September 25, 1964.

Albert R. McGovern, pro se.
*Carl W. Kloepfer*, for the respondent.

MULRONEY, *Judge:* Respondent determined deficiencies in the income tax of petitioners and additions thereto for the years and in the amounts as follows:

| Year | Deficiency | Addition to tax sec. 6653(b) |
|---|---|---|
| 1956 | $730.70 | $365.35 |
| 1957 | 958.33 | 479.17 |
| 1958 | 1,024.80 | 512.40 |
| 1959 | 827.16 | 413.58 |

The issues are whether petitioners failed to report income received by Theresa C. McGovern for nursing services performed by her and whether any part of the underpayment of income tax for said years was due to fraud.

#### FINDINGS OF FACT

Some of the facts have been stipulated and they are found accordingly.

Petitioners are husband and wife living in Detroit, Mich. They filed their joint income tax returns for the years 1956 through 1959

with the district director of internal revenue at Detroit. Their returns reported salary income earned by Albert R. McGovern in the years 1956, 1957, 1958, and 1959 as an expediter with a Detroit firm, in the respective amounts of $5,876.48, $6,278.72, $6,218.74, and $6,587.72.

Theresa McGovern, who was 32 years old at the time of trial, has been a registered nurse since her graduation in 1953. During all of the years here involved Theresa McGovern was a member of and associated with the Greater Detroit District Community Nursing Service (hereinafter referred to as the nurses' registry), at Detroit, as a registered nurse. The primary service performed by the nurses' registry was the assignment of registered or practical nurses to patients in various hospitals throughout the Detroit area, who requested private nurses. The assignment was on a rotation basis unless a certain nurse was requested by the patient or hospital. Upon completing an assignment the nurse would notify the nurses' registry of said completion.

It is admitted here that the nurses' registry for the years in question showed Theresa McGovern rendered services as a nurse for various patients for 198 days in 1956, 247 days in 1957, 265 days in 1958, and 201½ days in 1959. She received in return for her services payments ranging from $16 to $18 per day from her patients. Commencing with October 1956 and continuing through 1959, Theresa maintained a bank account in her own name wherein she made over 150 deposits during said period.

Petitioners prepared their own tax returns and both knew what income should be included in their returns. As stated, they reported the salary income of Albert R. McGovern ranging from over $5,800 to $6,500 a year but none of the earnings of Theresa McGovern derived from her employment as a private duty nurse. Respondent determined Theresa McGovern realized income from private duty nursing in the amounts of $3,366 in 1956, $4,199 in 1957, $4,505 in 1958, and $3,627 in 1959 which petitioners failed to report in their returns for said years.

Respondent concedes petitioners incurred business expenses in connection with Theresa's nursing employment in the form of fees paid to the nurses' registry in the amounts of $40 in 1956, $138.25 in 1957, $84.56 in 1958, and $87.50 in 1959. Petitioners incurred other business expenses in connection with said nursing employment such as uniform expenses in the sum of $35 a year.

A part of the underpayment of tax for each of the years involved was due to fraud.

OPINION

Petitioners tried their own case. They filed no brief. At the trial they did not contend Theresa McGovern had no employment as a private duty nurse during the years 1956 through 1959. They practically

conceded she was employed in her profession for 198 days in 1956, 247 days in 1957, 265 days in 1958, and 201½ days in 1959. It is undisputed she was paid from $16 to $18 a day when she worked. Respondent's determination that petitioners received nursing income which they failed to report in the years 1956, 1957, 1958, and 1959 in the amounts of $3,366, $4,199, $4,505, and $3,627, respectively, is sustained.

Respondent admits that from said nursing income there should be deducted as business expenses the fees paid to the nurses' registry in stipulated amounts. There was no evidence on which to base any exact amount of any additional business expense allowance. However, Theresa McGovern did testify that she incurred nurses' uniform expenses but she gave us no amounts. Being of the opinion she did incur some uniform expense we have allowed her $35 a year. *Cohan* v. *Commissioner*, 39 F. 2d 540.

Respondent had the burden of proof upon the issue of fraud. Sec. 7454, I.R.C. 1954. This means the burden was upon him to establish by clear and convincing evidence that some part of the underpayment for each year in issue was due to fraud. *Arlette Coat Co.*, 14 T.C. 751. We hold respondent sustained his burden as to all of the years in issue.

During each year petitioners deliberately filed income tax returns containing substantial understatements of income. The amount of the income they failed to report for said years was about 50 to 70 percent of the income they did report. They knew the nursing income was taxable income. Theresa McGovern testified that in dealing with her patients she made frequent use of what is termed a professional receipt book purchasable only from the nurses' registry. This is a book of receipt forms to be filled out and delivered to the patients with attached stubs that remain in the book which are to be used to record the data on the receipts. The stubs contain the printed direction: "(Retain for Income Tax Reporting)." The receipt book was a constant reminder of her income tax liability for the money she was receiving. It was her testimony that she had none of her receipt books or any other records showing how many days she worked or the amount of her earnings as a nurse, but she was vague on whether she had misplaced them or destroyed them.

Both petitioners are intelligent persons and the returns were the joint effort of both. They had studied the income tax instruction pamphlets and the returns show much knowledge of the requirements of the law. They were able to handle a $300 sick pay exclusion, with the required attached statement in their 1956 return. They did not even testify that they thought the nursing income should not be reported. It fairly appears Theresa put this income in her individual bank account. They deliberately tried to conceal this income. In their 1956 return they merely put the wife's social security number in

the space marked for "Wife's Social Security No. and Occupation." In the 1957 return where there was a special space for the wife's "Occupation" they put "Housewife." This was the year Theresa spent 247 days working as a nurse and earning over $4,000 in such employment. They used the short Form 1040-A for the years 1958 and 1959 which does not call for listing the wife's occupation.

The record shows that when first approached by the revenue agents Theresa denied working as a private duty nurse during the years 1956 through 1959. From the record as a whole we conclude that there is clear and convincing evidence that failure to report the nursing income was part of a deliberate plan by the petitioners to conceal this income. We uphold respondent's determination that part of the underpayment of tax for each of the years involved was due to fraud under section 6653(b), I.R.C. 1954.

*Decision will be entered under Rule 50.*