Albert H. Murray and Helen Murray v. Commissioner.
Murray v. Commissioner
Docket No. 79185.
United States Tax Court
T.C. Memo 1966-231; 1966 Tax Ct. Memo LEXIS 54; 25 T.C.M. (CCH) 1198; T.C.M. (RIA) 66231; October 20, 1966
*54 On December 15, 1958, respondent determined joint deficiencies and 50 percent additions thereto for fraud for the calendar years 1953 through 1957. Neither petitioner was represented by counsel or appeared at the hearing. Respondent proved that petitioners omitted from gross income amounts properly includible therein, which amounts were in excess of 25 percentum of the amount of gross income stated in the joint returns for 1953 and 1954. Respondent also proved that the returns for 1953 and 1954 were false and fraudulent with intent to evade tax. Respondent also proved that a part of the deficiency or underpayment for each of the years 1953 through 1957 was due to fraud with intent to evade tax. In his answer the respondent admitted allegation 4. 2C of the petition alleging that "Helen Murray did not file a joint return with her husband, Albert H. Murray, in the year 1957." The return filed for 1957 was filed by Albert H. Murray and bore his name only. It was signed by him only and was not signed by Helen Murray. None of the income included in the return was that of Helen Murray. None of the income determined by the respondent for 1957 was that of Helen Murray. Held: (1) The assessment *55 and collection of the taxes and additions to the tax for the years 1953 and 1954 are not barred by the statute of limitations; (2) petitioners are jointly and severally liable for the deficiencies and additions to the tax for the years 1953 through 1956; (3) only petitioner Albert H. Murray is liable for the deficiency and addition to the tax for 1957; and (4) there is no liability against petitioner Helen Murray for a deficiency or addition to the tax for the year 1957. Edward L. Newberger and Daniel H. Cochrane, for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: On December 15, 1958, respondent determined deficiencies in income tax and additions to tax as follows: Calendar
50% Additions
Year
Deficiency
to Tax
1953
$2,161.00
$1,080.50
1954
2,304.58
1,152.29
1955
8,424.09
4,212.05
1956
6,563.42
3,281.71
1957
5,849.69
2,924.85 Assessment of the above amounts, plus interest as provided by law, has been made under the provisions of the Internal Revenue Code applicable to jeopardy assessments. In the petition signed by petitioners and their then attorney, Richard W. Kiefer, petitioners assigned 31 specific errors, all of which were denied by respondent except assignment *56 4. 2C, alleging "Helen Murray did not file a joint return with her husband, Albert H. Murray, in the year 1957," which lone assignment was admitted in the answer filed by respondent. The remaining 30 assignments of error may be grouped into three alleged issues, as follows: (1) Whether respondent correctly computed petitioners' taxable income for the years 1953 through 1957; (2) Whether the respondent erred in determining that petitioners were liable for the additions to tax for fraud for each of the years 1953 through 1957; and (3) Whether the years 1953 and 1954 are barred by the statute of limitations. On May 12, 1960, this Court granted a motion of counsel to withdraw, in which motion the then counsel for petitioners, Richard W. Kiefer, stated he had received a letter from petitioner Albert H. Murray stating in part: I wish you would return the form re Trial Status Request, Docket 79185 dated April 20, 1960 indicating that we do not expect to try this case and also strike your appearance from any further action in our behalf. Findings of Fact Petitioners [1] are individuals, husband and wife, with residence at Hartly, Delaware, at the time the returns were filed. At the time of the *57 hearing petitioners were residing in Sao Paulo, Brazil. The returns for the period here involved were filed with the district director of internal revenue for the district of Wilmington, Delaware. Background Facts Petitioner was born on October 29, 1913, in Houston, Texas. He attended public schools in the Baltimore, Maryland, area. In 1935 he received a bachelor of science degree in chemistry from Johns Hopkins University after four years' attendance on scholarships. Following his graduation he was employed by the Continental Diamond Fibre Company at Newark, Delaware. Petitioner met Helen Kirby in 1940. They lived together under common law for four years. Early in 1944 petitioner was drafted into the United States Navy. At that time a civil marriage ceremony was performed. Petitioner received basic training at Bainbridge, Maryland, and then was assigned to a pre-radio school in Chicago, Illinois. Subsequently, he received training in electrical engineering and radio materiel at *58 the University of Houston, Houston, Texas. He was assigned for duty aboard the U.S.S. Clinton on April 16, 1945. Sometime in May 1945 petitioner deserted the U.S.S. Clinton in Hawaii. He obtained transportation back to the United States and took a bus East. Petitioner was carried on the Navy personnel rolls as a deserter. He was apprehended by Federal Bureau of Investigation agents on January 7, 1959, in Poughkeepsie, New York. By 1948 petitioner had returned to the Continental Diamond Fibre Company at Newark, Delaware, where he was employed in its sales and engineering division. In 1950 petitioner began working for the Stone Straw Corporation and its affiliated companies in Washington, D.C.
From July 1950 to September 1952 petitioner supervised the setting up and operation of a pilot plant for the manufacture of spirally wound and resonant impregnated paper tubing that is used in radio, television, and electrical business. Facts Relating to Income 1953 - 1957 During the years involved in the instant case, petitioner worked for the various corporations affiliated with the Stone Straw Corporation as an engineer and as a sales representative. He was compensated by a salary and by commissions. *59 Petitioners reported the salary on the joint income tax returns but did not report the commission income. Petitioner specifically omitted commission income from the returns filed for the years 1953 through 1957 in amounts as follows: Commission In-
Year
come Omitted
1953
$ 4,596.59
1954
9,748.61
1955
12,995.27
1956
11,605.84
1957
14,728.11
Total
$53,674.42
The above omitted commission income was paid to petitioner by the Stone Straw Corporation and its affiliated companies by years and in amounts as follows: Year
Amount
Paid
Name of Company
Paid
Total
1953
Stone Paper Tube Company of Delaware
$2,279.65
1953
Stonized Products Company, Inc.
2,316.94
$ 4,596.59
1954
Stone Paper Tube Company of Delaware
6,434.97
1954
Stonized Products Company, Inc.
3,313.64
9,748.61
1955
Stone Paper Tube Company of Delaware
8,241.98
1955
Stonized Products Company, Inc.
4,753.29
12,995.27
1956
Stonized Products Company, Inc.
983.92
1956
Stone Paper Tube Company of Maryland
Tube Division
7,891.01
Stonized Division
2,730.91
11,605.84
1957
Stone Paper Tube Company of Maryland
Tube Division
6,907.91
Stonized Division
4,593.22
1957
Stone Straw Corporation
Tube Division
1,506.21
Stonized Division
1,720.77
14,728.11
Total commission income omitted from returns
$53,674.42 In *60 1954, while still selling for the Stone Straw Corporation and its affiliated companies, petitioner purchased the Insulating Tube Company in Poughkeepsie, N. Y. He renamed the company Murray Plastics Company and operated it from 1954 through 1958. The company made a convoluted ground resonance impregnated paper tubing similar to that produced by the Stone Straw Corporation. In 1954 petitioner reported a loss of $11,350.26 from the operation of the Murray Plastics Company. The company did not sustain a loss in 1954 and at the initial audit petitioner agreed to the entire disallowance of the purported loss. In 1955 petitioner reported no income or loss from the operation of the Murray Plastics Company. For that year the respondent in his deficiency notice determined that "Business income in the amount of $10,000.00 was omitted from the return." In 1956 the only income reported on the return was wages, etc., of "Albert Murray (self) Nixon, New Jersey $3,600.00." For that year the respondent in his deficiency notice determined that petitioner had additional business income of $6,400 determined as follows: Business Income Corrected
$10,000.00
Business Income Reported
3,600.00
Additional Business Income
$ 6,400.00
*61 In 1957 the only income reported on the return was "8. Profit (or loss) from business from separate Schedule C $2,457.50." For that year the respondent in his deficiency notice determined that petitioner had additional business income of $7,542.50, determined as follows: Business Income Corrected
$10,000.00
Business Income Reported
2,457.50
Additional Business Income
$ 7,542.50
During the years 1955 through 1957 petitioner dealt extensively in securities with Merrill, Lynch, Pierce, Fenner & Beane, George D. Bonbright & Co., and Estabrook & Co. Petitioner reported no income from such activities, although he had dividend income in those years of $670, $1,375, and $1,050, respectively, which he omitted from the returns; and in addition to such omissions, the respondent determined that for 1955 and 1956 petitioner omitted net long-term capital gains of $1,863.62 and $6,882.66, respectively. During the years 1954 through 1957 petitioner owned a parcel of land and a building in Templeville, Queen Anne's County, Maryland, which he had rented to the 7-Up Bottling Company of Salisbury, Maryland, during all of that time. Petitioner also owned a parcel of land and a building in Marydel, Maryland. *62 During the years 1955 through 1957 he rented the land and building to the United States Post Office Department. The title to this realty was in the name of an alias, Alan Douglas of Lansdowne, Baltimore, Maryland. During the years in issue respondent determined that petitioner omitted rental income from the two above-described properties as follows: Rental Income
Year
Omitted
1954
$ 500
1955
600
1956
700
1957
1,100
On the joint return for 1953 filed March 15, 1954, petitioners reported a net income (loss) of ($2,976.33) made up of the following: Salary from Stonized Products Co.,
Inc.
$9,000.00
Less farm loss
7,591.27 *
Less itemized deductions
4,385.06
Net Income (loss)
($2,976.33)
The respondent determined that petitioners had a net income of $12,596.59, made up of the following: Net Income as Disclosed by Return
($ 2,976.33)
Additional Income and Unallowable
Deductions: (a) Commissions
$4,596.59
(b) Farm Loss
7,591.27
(c) Itemized Deductions
4,385.06
16,572.92
Total
$13,596.59
Nontaxable Income and Additional
Deductions: (d) Standard Deduction
1,000.00
Net Income
$12,596.59 On the joint return for 1954 filed April 15, 1955, *63 petitioners reported an adjusted gross income (loss) of ($3,350.26) made up of the following: Salary from Stonized Products Co.
$ 9,000.00
Less Murray Plastics loss
11,350.26
Adjusted Gross Income
($ 3,350.26) [2]
The respondent determined that petitioners' adjusted gross income was $18,248.61 made up of the following: Adjusted Gross Income as Previ-
ously Adjusted
$ 9,000.00 [3]
Additional Income and Unallow-
able Deductions: (a) Commissions
$9,748.61
(b) Rental Income
500.00
9,248.61 [4]
Adjusted Gross Income (Corrected)
$18,248.61
On the joint return for 1955 petitioner reported a taxable income of $3,290.49, made up of the following: Salary from Stonized Products Co.
$7,656.09
Less 10% Standard Deduction
765.60
Balance
$6,890.49
Less 6 exemptions
3,600.00
Taxable Income
$3,290.49 The respondent determined that petitioners' taxable income as corrected was $29,253.17, made up of the following: Taxable Income as Disclosed by
Return
$ 3,290.49
Additional Income: (a) Commissions
$13,995.27 [5] *64 (b) Rental Income
600.00
(c) Dividends
670.00
(d) Capital Gains (50%)
931.81
(e) Business Income
10,000.00
26,197.08
Total
$29,487.57
(f) Less additional Standard De-
duction
234.40
Taxable Income Corrected
$29,253.17 [5]
On the joint return for 1956 petitioners reported an adjusted gross income of $3,600. The respondent determined that petitioners' adjusted gross income was $28,122.17, made up of the following: Adjusted Gross Income as Disclosed
by Return
$ 3,600.00
Additional Income: (a) Commissions
$11,605.84
(b) Rental Income
700.00
(c) Dividends
1,375.00
(d) Capital Gains (50%)
3,441.33
(e) Stock Bonus
1,000.00
(f) Additional Business
Income
6,400.00
24,522.17
Adjusted Gross Income Corrected
$28,122.17
On the separate return for 1957 petitioner reported an adjusted gross income of $2,457.50. The respondent determined that petitioner's adjusted gross income was $25,958.11, made up of the following: Adjusted Gross Income as Disclosed
by Return
$ 2,457.50
Additional Income: (a) Commissions
$14,728.11
(b) Rental Income
1,100.00
(c) Dividends
130.00 [6]
(d) Additional Business
Income
7,542.50
23,500.61
Adjusted Gross Income Corrected
$25,958.11
Facts Relating to Fraud On April 1, 1958, petitioner filed his 1957 income tax return *65 showing a tax purportedly owing of $83.35. Petitioner placed a note on the return which read: Cannot pay total now, $3.00 enclosed for applying to account. At the time this note was written petitioner had a balance of $5,500 in the Delaware Trust Company of Wilmington, Delaware. Following the special agent's first contact with petitioner, he attempted to conceal his sole ownership of Murray Plastics Company. The special agent first contacted petitioner in November 1957. On December 2, 1957, petitioner directed his bookkeeper to draw up a list of equipment used by Murray Plastics Company and indicated to her that he intended to incorporate the business. He told her that the title to the property was to be conveyed to her and that she would be paid a monthly rental of $200, of which she was to kick back $150 a month to him. The first rental payment was made to her the same day and she returned the $150 to petitioner. This was repeated in January and February of 1958. Soon after the purported conveyance, petitioner brought a man to the Murray Plastics Company and introduced him to the bookkeeper as Burns, the new owner of the Murray Plastics Company. In fact, the investigation disclosed *66 that one Dennis E. Tarington of Syracuse was the individual introduced under the fictitious name of Burns, and that all this had been a scheme done at the petitioner's request in order to conceal the true ownership of Murray Plastics Company. Shortly after the investigation began, petitioner closed his account with Merrill, Lynch, Pierce, Fenner & Beane. At some time prior to April 10, 1959, petitioner opened 33 savings accounts under seven aliases. Of these accounts there were 12 in the name of James Lee, eight in the name of Leon Genay, eight in the name of Allan Martin, two in the name of Raymond H. Hall, and one each in the names of Leon P. Genay, Alfred Driver, and James Parker. Thirty-one of the above savings accounts were scattered in eight cities in the United States and two (those of Raymond H. Hall) were in Canada. In addition to these 33 savings accounts, petitioner opened one account in his name (Albert Murray) in Zurich, Switzerland. As of April 10, 1959, the balances in these accounts were as follows: James Lee
$44,387.66
Leon Genay
6,669.40
Allan Martin
8,625.27
Raymond H. Hall
350.00
Leon P. Genay
1,000.00
Alfred Driver
5,050.00
James Parker
959.06
Albert Murray
1,713.80
Total
$68,755.19
As *67 a result of the criminal investigation, the grand jury in the United States District Court for the District of Delaware returned an indictment against petitioner on January 23, 1961, for filing false and fraudulent returns for 1954, 1955, 1956, and 1957 and for subscribing willfully and knowingly on April 8, 1958, to a written declaration on petitioner's 1957 return which he did not believe to be true and correct. Petitioner was never criminally tried under this indictment because he fled to Sao Paulo, Brazil. His wife later joined the petitioner in his self-imposed exile. Ultimate Findings Petitioners omitted from gross income in their joint income tax returns for 1953 and 1954 amounts properly includible therein, which amounts were in excess of 25 percentum of the amount of gross income stated in the returns. The returns for 1953 and 1954 were false and fraudulent with intent to evade tax. The statute of limitations does not bar the assessment and collection of the tax due for the years 1953 and 1954. A part of the deficiency or underpayment for each of the years 1953 through 1957 was due to fraud with intent to evade tax. Petitioner Helen Murray did not file a joint return with *68 her husband, Albert H. Murray, for the year 1957. The return filed for 1957 was filed by Albert H. Murray and bore his name only. It was signed by him only and was not signed by Helen Murray. None of the income included in the return was that of Helen Murray. None of the income determined by the respondent for 1957 was that of Helen Murray. Petitioners are jointly and severally liable for the deficiencies and additions to the tax for the years 1953 through 1956. Petitioner Albert H. Murray alone is liable for the deficiency and additions to the tax for 1957. There is no liability against petitioner Helen Murray for any deficiency or addition to tax for the year 1957. Opinion The burden of proof is upon the respondent to show that petitioners for 1953 and 1954 omitted from gross income "an amount properly includible therein which is in excess of 25 [percentum] * * * of the amount of gross income stated in the return" so as to have the additional time provided for in section 275(c), I.R.C. 1939, and section 6501(e)(1)(A), I.R.C. 1954, for making the assessment, provided for in those statutory provisions. C. A. Reis, 1 T.C. 9; Elvina Ratto, 20 T.C. 785; Lois Seltzer, 21 T.C. 398; *69 Elizabeth H. Bardwell, 38 T.C. 84, affirmed without discussion of this point, 318 F. 2d 786 (C.A. 10, 1963). The burden of proof to show error in the determination of the deficiencies is upon the petitioners. Tax Court Rules of Practice, Rule 32; Welch v. Helvering, 290 U.S. 111; Frank Imburgia, 22 T.C. 1002, 1010. The burden of proof to show "fraud with intent to evade tax" is upon the respondent. Section 1112, I.R.C. 1939; section 7454(a), I.R.C. 1954; Albert R. McGovern, 42 T.C. 1148, 1150, affirmed - F. 2d - (C.A. 6, 1966). Regarding the statute of limitations issue for 1953 and 1954, respondent has sustained his burden. The joint returns for 1953 and 1954 were filed on March 15, 1954, and April 15, 1955, respectively. The deficiency notice was mailed on December 15, 1958. Therefore, the 3-year statute provided for in section 275(a), I.R.C. 1939, and 6501(a), I.R.C. 1954, had expired unless the additional time provided for in sections 275(c) and 6501(e)(1)(A) is applicable. In Elvina Ratto, supra, we said: The applicability of section 275(c) [and section 6501(e)(1)(A), I.R.C. 1954] is [are] dependent upon two things: (1) the amount of "gross income stated in the return," and *70 (2) the amount of gross income the taxpayer omits from the return. If the latter exceeds 25 per centum of the former the 5-year [6-year] limitation is applicable. In establishing (2) above it is not necessary that respondent prove all the income he has determined was received by petitioners. All he needs to establish is that petitioners omitted an amount of gross income which was in excess of 25 percentum of the gross income shown by petitioners in their returns. For 1953 and 1954 respondent has proven that petitioners reported gross income as follows: 1953
1954
Salary
$ 9,000.00
$9,000
Farm income
2,387.00
None
Gross income reported
$11,387.00
$9,000
25% of amount reported
$ 2,846.75
$2,250
Respondent has also proven that for these two years petitioners omitted commission income alone in the amounts of $4,596.59 and $9,748.61, respectively. Since these omitted amounts are in excess of $2,846.75 and $2,250, respectively, it follows that respondent had five and six years, respectively, from the time the returns were filed to issue the deficiency notice (which was issued on December 15, 1958) and that the statute of limitations for those years has not expired. We so hold. Regarding the deficiencies, *71 neither petitioner appeared at the hearing nor was either petitioner represented at the hearing, and no evidence was offered on behalf of the petitioners to sustain the 31 errors assigned in the petition, except that assignment of error 4.2C, alleging "Helen Murray did not file a joint return with her husband, Albert H. Murray, in the year 1957" was admitted by the respondent in his answer. Therefore, except for 1957, all of the deficiencies determined by respondent against petitioners for the years 1953 through 1956 are sustained. Joseph A. Indelicato, 42 T.C. 686. The return filed for 1957 was filed by petitioner Albert H. Murray and bore his name only. It was signed by him only and was not signed by Helen Murray. None of the income included in the return was that of Helen Murray. None of the income determined by the respondent for 1957 was income of Helen Murray. We hold that only petitioner Albert H. Murray is liable for the deficiency for 1957 and that there is no liability against petitioner Helen Murray for a deficiency or addition to the tax for the year 1957. William W. Kellett, 5 T.C. 608, 622 (Issue 2). We come now to the issue of fraud. On this issue we think respondent *72 has also sustained his burden. He need only prove that "any part of any deficiency is due to fraud with intent to evade tax." Section 293, I.R.C. 1939. [7] The material portion of the 1954 Code is substantially the same. [8]
Petitioners' returns were *73 scanty and poorly prepared. In only one of the five years, namely, in 1955, did the returns show any taxable income. In that year petitioners reported a taxable income of $3,290.49 and a tax liability of $658.10, whereas the respondent determined that petitioners understated their income for the five years in the total amount of $116,977.25 [9] made up of the following combined items: Disallowed Deductions
Farm loss (1953)
$ 7,591.27
Murray Plastics Co. loss (1954)
11,350.26
Itemized Deductions (Net, 1953-1957)
8,970.66
$ 27,912.19
Omitted Income
Commission income (1953-1957)
$54,674.42
Business income (1955-1957)
23,942.50
Dividend income (1955-1957)
2,175.00
Long-term capital gain (50%, 1955-1956)
4,373.14
Rental income (1954-1957)
2,900.00
Stock bonus (1956)
1,000.00
89,065.06
Total understatement of income
$116,977.25
In order to establish "fraud with intent to evade tax" it was not necessary for respondent to prove *74 all of the above items of understatement determined by him. As stated above, he need only prove that a "part of any deficiency is due to fraud with intent to evade tax." Estate of W. Y. Brame, 25 T.C. 824, affirmed per curiam 256 F. 2d 343 (C.A. 5, 1958). This must be done by clear and convincing evidence. Arlette Coat Co., 14 T.C. 751; Albert R. McGovern, supra; Cefalu v. Commissioner, 276 F. 2d 122 (C.A. 5, 1960), affirming a Memorandum Opinion of this Court. Respondent offered clear and convincing evidence that petitioners omitted from the returns the above-mentioned commission income and dividend income as follows: Commission
Dividend
Year
Income
Income
1953
$ 4,596.59
1954
9,748.61
1955
12,995.27 [10]
$ 670
1956
11,605.84
1,375
1957
14,728.11
1,050 [10]
Totals
$53,674.42
$3,095
The evidence regarding the commission income consisted of the testimony of Raymond E. Limthicum, the treasurer and secretary of the Stone Straw Corporation, who testified petitioner received all of the above stated commission income in the years shown above. For the years 1954 through 1957, respondent also introduced the cancelled checks issued by the Stone Straw Corporation and its subsidiaries showing that *75 the above amounts were paid to petitioner in those years. Also, the respondent introduced the U.S. Information Returns (Form 1099) filed by those companies showing that they paid petitioner the said commission income. Thus, respondent has shown from three sources that petitioner received $53,674.42 of commission income for the years 1953 through 1957 that he omitted from the returns filed for those years. The evidence regarding the dividend income consisted of the testimony of Larry J. Rusecki, the supervisor in the record section of Merrill, Lynch, Pierce, Fenner & Smith, Incorporated. Rusecki produced the accounts petitioner had with this brokerage firm, which accounts showed that petitioner received, during the years 1955 through 1957, the above-mentioned dividends which he omitted from the returns filed for those years. Consistent and substantial understatements of taxable income over a number of years are, by themselves, strong evidence of a fraudulent intent to evade the income tax. Albert N. Shahadi, 29 T.C. 1157, affirmed 266 F. 2d 495 (C.A. 3, 1959), certiorari denied 361 U.S. 874; Schwarzkopf v. Commissioner, 246 F. 2d 731 (C.A. 3, 1957), affirming a Memorandum Opinion *76 of this Court. Cf. Toledano v. Commissioner, 362 F. 2d 243 (C.A. 5, 1966), affirming in part, reversing in part, and remanding a Memorandum Opinion of this Court. In the instant case the respondent has shown considerable indicia of fraud, in addition to the consistent omission of substantial amounts of income year after year. He has shown that petitioner was non-cooperative during the investigation of the returns. On the 1954 return he deducted a loss from the operation of the Murray Plastics Company of $11,350.26 when in fact he had no such loss and later so admitted before the revenue agent making the investigation. He later attempted to conceal his ownership of the company. He concealed substantial funds by opening 33 savings accounts under seven aliases in different cities in the United States and abroad. The use of such aliases is strongly indicative of fraud with intent to evade income tax. Lipsitz v. Commissioner, 220 F. 2d 871, 875 (C.A. 4, 1955), affirming 21 T.C. 917, certiorari denied, 350 U.S. 845; Gunn v. Commissioner, 247 F. 2d 359, 365 (C.A. 8, 1957), affirming on this point a Memorandum Opinion of this Court. Another example of fraud was petitioner's statement *77 on his 1957 return wherein he reported as owing a self-employment tax of $83.35 but paid only $3, with a note on the return saying, "Cannot pay total now, $3.00 enclosed for applying to account" when, as a matter of fact, petitioner on that day had a balance of $5,500 in the Delaware Trust Company of Wilmington, Delaware. Cf. section 7206(1), I.R.C. 1954. Finally, as a result of petitioner's fraudulent activities, he was indicted on January 23, 1961, by the grand jury in the United States District Court for the District of Delaware for the filing of false and fraudulent returns for 1954, 1955, 1956, and 1957 and for subscribing willfully and knowingly on April 8, 1958, to a written declaration on his 1957 income tax return which he did not believe to be true and correct. Petitioner was never brought to trial under this indictment because he fled to Brazil after the indictment was returned. He has chosen to remain a fugitive from justice. Petitioner's wife has also chosen to remain in Brazil. We think petitioner's flight from the United States after an indictment for criminal prosecution under the income tax laws is also strong evidence of a fraudulent intent. On the basis of the entire *78 record, we hold petitioners are liable for additions to tax under sections 293(b), I.R.C. 1939, and 6653(b), I.R.C. 1954, for the years 1953 through 1956, and that petitioner Albert H. Murray alone is liable for additions to tax under section 6653(b) for the year 1957. Cf. Cirillo v. Commissioner, 314 F. 2d 478, 484 (C.A. 3, 1963), affirming in part and reversing in part a Memorandum Opinion of this Court. We also specifically find and hold that the returns for 1953 and 1954 were false and fraudulent with intent to evade tax under sections 276(a), I.R.C. 1939, and 6501(c)(1), I.R.C. 1954, respectively, which is an additional ground for holding that the assessment and collection of the taxes and additions to the tax for those years are not barred by the statute of limitations. Decision will be entered under Rule 50. Footnotes
1. Helen Murray is a petitioner herein by reason of the filing of joint returns for the years 1953 through 1956. Unless otherwise indicated, Albert H. Murray will hereinafter be referred to as the petitioner.↩
*. In arriving at this farm loss petitioner had reported a gross income from farming of $2,387.↩
2. In view of respondent's determination, this apparent error of $1,000 becomes immaterial.↩
3. Apparently, in a prior examination of petitioners' return, the respondent had disallowed the Murray Plastics loss. ↩
4. No point is made of this apparent error of $1,000 in petitioners' favor.↩
5. Respondent in his brief concedes that commission income was only $12,995.27, which would change the taxable income corrected to $28,253.17.
6. Respondent has proven that petitioner received dividends during 1957 of $1,050.↩
7. (b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of of the 50 per centum addition to the tax provided in section 3612(d)(2). ↩
8. SEC. 6653. FAILURE TO PAY TAX. (b) Fraud. - If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). (c) Definition of Underpayment. - For purposes of this section, the term "underpayment" means - (1) Income, Estate, and Gift Taxes. - In the case of a tax to which section 6211 (relating to income, estate, and gift taxes) is applicable, a deficiency as defined in that section * * *.↩
9. This determination varies from the proof in two particulars. In 1955 the respondent determined petitioners omitted commissions of $13,995.27 whereas the proof shows $12,995.27. In 1957 the respondent determined that dividends were omitted in the amount of $130 whereas the proof shows $1,050.↩
10. See footnote 9.↩