*491 OPINION.
Hill :
The first question for decision in this case involves a deduction of $4,200 claimed by petitioner in its original return on account of expenses alleged to have been incurred and paid by petitioner’s three stockholders and directors, and which was repaid to them by petitioner in equal amounts of $1,400 each. The Commissioner first proposed to disallow the entire amount of the claimed deduction, but, after conferences were held in the latter part of 1935, it was agreed between the parties that one-half of the amount should be allowed and that additional tax should be assessed and paid on the basis of the disallowance of one-half. Accordingly, on December 31,1935, petitioner signed a waiver of restrictions on assessment and collection (Form 870) and an additional tax of $288.75 was assessed, which petitioner paid in January 1936, all prior to the mailing of the deficiency notice on April 10, 1936.
The deficiency here in controversy was computed by respondent as follows:
Net income reported on amended return-$50, 507.94
Add:
(1) One-half expenses paid Messrs. Pratt, Johnson and Green disallowed-s- 2,100.00
(2) Income from Katy and Buchanan leases- 43, 643.32
Adjusted net income_ 96, 251.26
On brief petitioner contends that respondent’s action in computing the deficiency results in the disallowance of that portion of the claimed deduction which was allowed in the settlement in 1935, and argues that “The settlement of the controversy by the allowance of $2,100.00 and the payment of the tax on the balance of $2,100.00 should be allowed to stand.” In his brief respondent refers to the settlement in 1935, and says: “In view of the evidence, it is submitted that the allowance of $2,100 of the claimed, deduction, and no more, is proper. This *492 will conform to tbe agreement of the parties reached before the mailing of the deficiency notice.” Thus, it appears that the controversy here arises from the misconception by petitioner of the effect of respondent’s computation of the present deficiency. This item in the full amount of $4,200 was claimed as a deduction in petitioner’s original return, and no change in that respect is shown to have been made in the amended return. Therefore, since respondent started his computation of the deficiency with the net income shown on the amended return, it was necessary to add to such net income the amount of expenses theretofore disallowed. Otherwise, the deficiency would have reflected in effect an allowance of the entire deduction claimed, which petitioner does not here contend for. Respondent’s determination on this point is approved.
Petitioner further contends that respondent was without lawful authority to determine the deficiency in controversy, in view of the agreed settlement of tax liability in 1985. Petitioner has cited no statute or other authority in support of its contention, and we find it is without merit. Form 870, which petitioner executed at the time mentioned, constituted merely a waiver of restrictions on assessment and collection of additional tax, and plainly stated on its face that it was not a final closing agreement under section 606 of the Revenue Act of 1928.
Petitioner also pleads that assessment and collection of the deficiency in controversy are barred by limitation. The statute applicable is section 275 (a) of the Revenue Act of 1932, which provides that “the amount of income taxes imposed by this title shall be assessed within two years after the return was filed.” Petitioner’s return was not offered in evidence, and there is no proof in the record as to when it was filed. The burden is upon petitioner to prove the facts necessary to show that the period provided in the statute had expired prior to the mailing of the deficiency notice, and for lack of such proof its plea must be denied. Edward M. Lawrence, 3 B. T. A. 40; L. J. Christopher, 13 B. T. A. 729, 740; J. Friedman & Co., 16 B. T. A. 1119, 1122; Elnora C. Haag, 19 B. T. A. 982, 986; Lester L. Robison, 22 B. T. A. 395, 399; M. A. Nicholson, 22 B. T. A. 744, 746.
The second and principal issue involves the amounts of income taxable to petitioner as its shares of production from the Katy and Buchanan oil and gas leases. Petitioner contends that it owned only one-sixteenth of the working interest of each lease, and so was taxable only on that proportion of the production, which it reported in its income tax return. Respondent takes the position that during the taxable year petitioner owned one-half of the working interest in the Katy lease and three-sixteenths of the working interest in the Buchanan lease. There is now no controversy respecting the amount *493 of the proceeds from production in the taxable year, since respondent accepts petitioner’s own figures, which show that the total gross production from the seven-eighths working interest in the Katy lease was $58,969.92, and that the amount derived from the three-fourths working interest in the Buchanan lease was $21,915.52. Thus, the issue submitted requires us to determine only the amount or proportion of the gross production from each well which constitutes income taxable to petitioner.
We shall consider first the ownership of the working interest in the Katy lease during the taxable year. In its brief petitioner says that it erroneously reported in its amended return one-sixteenth of the proceeds from the working interest in the Katy well; that it was the agent or trustee only for the owners of fifteen-sixteenths of such working interest, and in fact distributed the entire taxable income for 1932 from the working interest to those legally entitled to it, that is, one-fourth to' the railroad company as bonus for the lease, one-lialf to the drilling company under the drilling contract and assignments, and one-fourth to Frank Kussell on his assignment as security for the repayment of a loan. The facts disclosed by the record, we think, do not support petitioner’s contentions.
Under its original contract with the railroad company, the pertinent provisions of which are set out hereinabove, petitioner acquired a seven-eighths working interest in the Katy lease, subject to the provisions of article VI of the contract to the effect that, in addition to the one-eighth royalty reserved to the railroad company, that company should be paid the proceeds from the sale of one-fourth of seven-eighths of the oil produced until the sum of $15,000 had been paid thereby. However, the provisions respecting the payment of the bonus of $15,000 out of proceeds from the sale of oil were eliminated by a supplemental agreement subsequently entered into during 1931 between petitioner and the railroad company, whereby it was stipulated that in lieu of such payment out of oil petitioner should deliver fuel oil to the railroad company equal in value of one-fourth of seven-eighths of the oil produced on the day the same was run into the pipe line with which petitioner connected its well. Petitioner did not produce fuel oil, but during the taxable year purchased fuel oil in the amount agreed upon and delivered it to the railroad company.
From the recital of the foregoing facts, we think it is clear that the railroad company owned no interest in the oil production so far as concerns the $15,000 bonus to be paid in fuel oil. The supplemental agreement was in lieu of the provisions of article VI of the original contract, pursuant to which the railroad company had acquired an oil payment of $15,000 out of one-fourth of seven-eighths of the gross production. Such oil payment the railroad company relinquished by the supplemental agreement and accepted in lieu thereof the promise of peti *494 tioner to deliver fuel oil to tbe value of $15,000 in proportion to or as measured by the daily gross production of the well. The railroad company was not required to look to production from the Katy lease for payment of the $15,000 bonus, and petitioner was not required to purchase fuel oil out of the proceeds from such production. It could have discharged this obligation by the use for that purpose of any funds available to it. Cf. Hoe Estate Co. v. Commissioner, 85 Fed. (2d) 4, affirming 32 B. T. A. 903. We conclude, therefore, that the income derived from the one-fourth of the seven-eighths working interest, mentioned in article VI of the contract above referred to, was taxable to petitioner. Anderson v. Helvering, 310 U. S. 404.
On March 10,1932, petitioner entered, into a contract with the Hugh Hodges Drilling Co. to drill an oil and gas well on the Katy lease, and as part consideration therefor transferred to the drilling company a one-half interest of the seven-eighths working interest thereof until $103,750 had been paid out of oil therefrom as and when produced. It follows that one-half of seven-eighths of the proceeds from production in the taxable year was not income to petitioner. Thomas v. Perkins, 301 U. S. 655. Cf. Palmer v. Bender, 287 U. S. 551. The parties are in agreement on this point, and further discussion is deemed unnecessary.
However, petitioner contends that of the proceeds from the remaining one-half of seven-eighths of production from the Katy well, one-fourth was owned by Frank Russell. The evidence shows that petitioner borrowed $20,000 from Russell, and on June 17, 1931, executed an instrument entitled “Assignment of Oil and Gas Lease”, which purported in terms to assign and convey to Russell a one-fourth of seven-eighths undivided interest in the Katy lease until he should have been paid the sum of $25,000 from the proceeds of such interest; but the instrument contained the further provision that, “This assignment shall be construed as a first mortgage of $25,000.00 on said undivided one-fourth interest of said oil and gas lease.” This would indicate that the relation between petitioner and Russell was that of debtor and creditor. Such conclusion is further strengthened by the following extract quoted from the report of proceedings at the hearing:
The Member. * * * I take it, from tbis instrument here (tbe so-called assignment above mentioned), wbat bas been read to me, and the testimony, it is probably security for tbe repayment of money. Is that wbat it is?
Mr. Pratt. [Petitioner’s counsel.] Yes.
Mr. Marshall [Respondent’s counsel]. Tbe parties will admit that.
Under this construction of the so-called assignment, certainly Russell owned no present interest in the production of the Katy well during the taxable year. His interest was contingent; it was merely collateral security for the loan, and Russell had no enforceable interest unless *495 and until petitioner defaulted in the payment of its obligation. There is nothing in the record to indicate that Bussell was to look to production of oil for repayment of the loan, and no part of the proceeds from such production constituted income taxable to him. He had no depletable interest therein during 19S2. Anderson v. Helvering, supra. Hence, the proceeds from the one-fourth of the working interest in the lease mentioned in the Bussell “assignment” was petitioner’s income and taxable to it, whether or not petitioner paid over the whole or any portion thereof to Bussell in satisfaction of its obligation to him.
Since the Hugh Hodges Drilling Co. owned one-half of seven-eighths of the oil produced from the Katy well in 1932, the proceeds of which the parties now agree did not constitute income to petitioner, and neither the railroad company nor Frank Bussell owned any interest in any portion of the oil produced, it follows that the remaining one-half of the proceeds, or the sum of $29,484.96, constituted income taxable to petitioner.
' In this connection it is to be noted that there is no contention that any portion of the proceeds of production from the Katy well in the taxable year was either distributed or distributable to the Centorp Corporation or the other assignees of future and contingent interests referred to in our findings of fact above.
On October 31, 1931, petitioner acquired a three-fourths working interest in the Buchanan lease by assignment from C. L. Norris, the original lessors having retained a one-eighth royalty interest and Norris a one-eighth overriding royalty interest. On November 16, 1931, petitioner entered into a contract with the Hugh Hodges Drilling Co. for the drilling of a well on this lease, and as part payment therefor assigned on March 1,1932, to the drilling company five-eighths of its three-fourths working interest until $95,000 had been paid out of oil as and when produced. The parties now agree that five-eighths of three-fourths of the proceeds from gross production from the Buchanan lease during 1932 was not income to petitioner. The question for decision is whether or not any portion of the proceeds from production of the remaining three-eighths of the three-fourths working interest was taxable to petitioner.
There is no contention that any portion of the income from the Buchanan well in 1932 was paid or payable to Green, Johnson, and Pratt, petitioner’s stockholders and directors, under the assignments of future and contingent interests executed April 7, 1932. It is petitioner’s contention that three-eighths of the proceeds from production, or the full amount remaining over and above that assigned to the drilling company, belonged to the Centorp Corporation and that no part thereof constituted income taxable to petitioner.
*496 Centorp furnished, the casing for the Buchanan well, amounting to about $22,500, and also a bond of $200,000 required by Oklahoma City. In consideration therefor, petitioner assigned to Centorp on February 17, 1932, an undivided three-eighths of its three-fourths working interest, but the instrument evidencing such assignment specifically provided that three-sixteenths, or one-half of the interest so assigned, was subject to the payment out of oil, as and when produced and saved, of $32,500 of the cost of drilling and equipping the well. Since the total production during 1932 amounted to only $21,915.52, it is apparent that three-sixteenths, or one-half of the undivided interest assigned to Centorp, was during the taxable year a future and contingent interest, and that Centorp was the unconditional owner in that year of only a three-sixteenths interest in petitioner’s three-fourths working interest. There being no other assignments, it follows that three-sixteenths of three-fourths working interest belonged to petitioner, and three-sixteenths of three-fourths of the proceeds from the gross production, or the amount of $4,109.16, was income taxable to petitioner. We so hold.
The amounts derived from gross production from the Katy and Buchanan leases which we hereinabove found to constitute income taxable to petitioner represent its total proportionate shares and will be reduced by the amounts reported as income from such sources by petitioner in its original or amended income tax returns for 1932. The deficiency will be recomputed accordingly.

Decision will he entered under Rule 50.