*Decision will be entered under Rule 50.*

ESTATE OF HARRY A. GORDON, DECEASED, RUTH E. GORDON, EXECU-TRIX, AND RUTH E. GORDON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5557-65. Filed January 31, 1967.

*Myron E. Anderson,* for the petitioners.
*Gary O. Randall,* for the respondent.

### OPINION

FAY, *Judge:* Respondent asserted deficiencies in Federal income tax of Harry A. Gordon and Ruth E. Gordon in the amount of $3,291.38 for the taxable year 1962.[1]

The issues for decision are (1) whether petitioners are entitled in 1962 to the special income-averaging provisions afforded taxpayers under sections 1305 or 1306 of the Internal Revenue Code of 1954 and (2) in the event petitioners are entitled to the special treatment of sections 1305 or 1306, whether petitioners as cash basis taxpayers may deduct certain expenditures only in the years in which they were actually made.

All of the facts and exhibits were stipulated by the parties.

---

[1] In the same notice of deficiency, respondent determined an overassessment in petitioners' Federal income tax in the amount of $54.90 for the taxable year 1961. Respondent's motion to dismiss the proceeding herein as to the year 1961 for the reason that this Court does not have jurisdiction with respect to said year was granted.

Harry A. Gordon, deceased (hereinafter referred to as Gordon), and Ruth E. Gordon [2] filed a Federal joint income tax return with the district director of internal revenue, Boise, Idaho, for the calendar year 1962, reporting their income on the cash basis.

Gordon independently operated the Rialto Theater (hereinafter referred to as Rialto) in Boise, Idaho, from and during 1957 through 1962. He and other independent theater operators believed that the film distributors were favoring the chain operated theaters in violations of the Sherman Anti-Trust Act, commonly known as the Clayton Act.

On September 16, 1959, Gordon, doing business as Rialto, and Marvin R. Cox, president of the Pioneer Drive-In Theatre, Inc. (hereinafter referred to as Pioneer), of Provo, Utah, entered into an agreement with Joseph L. Alioto, an attorney at law, to handle the litigation pertaining to the alleged violations of the Clayton Act, wherein petitioners and Pioneer were (1) to share equally the expenses of an action to be brought under the Sherman Anti-Trust Act and (2) to share equally any recovery that might be received either from settlement or litigation, *regardless of whose lawsuit or whose negotiations resulted in recovery*. The parties also agreed to pay (1) 10 percent of any recovery as well as out-of-pocket expenses to one D. K. Edwards, a buyer and broker for Rialto and Pioneer and (2) to Alioto the following:

a. A retainer of $3,000 to be paid upon the execution of the agreement.

b. Litigation expenses.

c. One-third of the recovery in the event of trial or one-fourth in the event of settlement, minus the retainer of $3,000.

Alioto elected to proceed in the name of Pioneer. On June 8, 1960, suit for Pioneer was filed in the Federal District Court for the District of Utah (hereinafter referred to as the Pioneer suit), naming several film distributors as defendants. A jury trial was had, and a judgment on the verdict was filed on January 4, 1962, granting plaintiff (Pioneer) a judgment in the sum of $90,000, *plus attorney's fees and costs*.

After the judgment, the defendants settled the case by paying $30,000 in excess of the aforestated $90,000 judgment. Part of the consideration for this excess amount ($30,000) was the understanding by the defendants that Gordon was to receive a portion of the total settlement for his own claim (to wit—alleged injuries to Rialto) and that such claim would not be prosecuted.

In 1962, Gordon received $35,000 pursuant to his agreement with Cox as his share of the $120,000.

---

[2] Ruth E. Gordon is the surviving spouse and executrix of the Estate of Harry A. Gordon.

Gordon incurred the following expenses pertaining to the litigation involved herein.

| Check No. | Date | Amount | Check No. | Date | Amount |
|---|---|---|---|---|---|
| 6530 | Sept. 7, 1957 | $92.62 | 8634 | Dec. 12, 1961 | $45.16 |
| 6534 | Sept. 10, 1957 | 35.00 | 8635 | Dec. 12, 1961 | 100.00 |
| 6551 | Sept. 24, 1957 | 2,000.00 | 8864 | Mar. 9, 1962 | 2,500.00 |
| 7837 | Feb. 6, 1960 | 500.00 | 8936 | Apr. 16, 1962 | 500.00 |
| 8278 | July 22, 1961 | 500.00 | Less amount refunded | | (125.00) |
| 8431 | Sept. 25, 1961 | 500.00 | | | |
| 8623 | Dec. 1, 1961 | 1,000.00 | Total | | 7,647.78 |

In his notice of deficiency, respondent asserted that the sum of $35,-000 received by Gordon under the agreement with Cox involving litigation of Pioneer is fully taxable in 1962 on the grounds that sections 1305 and 1306 are not applicable.

In his notice of deficiency, respondent allowed Gordon to deduct the sum of $2,145.16 from the taxable income for 1961 representing expenses incurred by Gordon in the antitrust litigation and paid in that year. In his answer, respondent denied there could be deducted from taxable income for 1962 any amounts expended in the course of the litigation in a year other than 1962.

For taxable years that began before 1964, section 1306 [3] offers spreadback relief to taxpayers who received damages in a civil action brought under section 4 of the Clayton (Antitrust) Act for injuries sustained by their business or property. Where applicable, section 1306 provides that the tax attributable to the damages received could not be greater than the increase in taxes which would have resulted if the amounts had been received ratably over the period of the injury.

The first issue for decision is whether the $35,000 received by Gordon constitutes an "amount" of the variety described by section 1306, that is—an amount representing damages received or accrued by a taxpayer as a result of an award in, or a settlement of, a civil action brought under the Clayton Act *for injuries sustained by the taxpayer in his business or property.*

Any cause of action which Gordon had, as owner of Rialto, against the defendants named in the Pioneer suit was not vitiated by the civil action brought in the name of Pioneer. Neither the initiation of the Pioneer suit nor the judgment on the verdict therein precluded Gordon

---

[3] Sec. 1306, I.R.C. 1954, provides:

If an amount representing damages is received or accrued during a taxable year as a result of an award in, or settlement of, a civil action brought under section 4 of the Act entitled "An Act to supplement existing laws against unlawful restraints and monopolies, and for other purposes" approved October 15, 1914 (commonly known as the Clayton Act), for injuries sustained by the taxpayer in his business or property by reason of anything forbidden in the antitrust laws, then the tax attributable to the inclusion of such amount in gross income for the taxable year shall not be greater than the aggregate of the increases in taxes which would have resulted if such amount had been included in gross income in equal installments for each month during the period in which such injuries were sustained by the taxpayer.

from asserting his cause of action based on his ownership of Rialto in an antitrust suit against any or all of the named defendants in the Pioneer suit, or against additional defendants.[4] The Pioneer suit in no way would be binding on a court in a later adjudication of the Rialto action.[5] Thus, there never occurred a merger or pooling in a legal or technical sense of Rialto's and Pioneer's causes of action. Both remained separate and distinct.[6]

Since Pioneer was the only plaintiff in the Pioneer suit, *a fortiori*, the judgment on the verdict ($90,000) was and could only have been based upon injuries sustained by Pioneer. Any injuries which might have been suffered by Rialto at the hands of the same defendants could not have been taken into account by the District Court in reaching its decision. Since the Pioneer suit and judgment therein was based upon injuries to Pioneer, Gordon received his portion of that $90,000 judgment solely by reason of his agreement with Cox. Gordon's belief that he had a cause of action against the defendants named in the Pioneer suit coupled with the agreement does not serve to commute any portion of the $90,000 judgment into damages for injury sustained by Rialto.

The defendants in the Pioneer suit paid an additional $30,000 in final settlement of that suit, part of which amount was paid in return for the termination of any rights that Gordon may have had against said defendants for injuries which his theater may have suffered. However, we do not believe that section 1306 applies to any portion of the $30,000 received by Gordon. There is no evidence to show how much of the additional $30,000 paid by the defendants was in consideration for Gordon's relinquishment of his alleged cause of action. Hence we cannot make an allocation even if we were convinced that such procedure would be legally proper under the facts of the instant case. Moreover, we do not believe that such an allocation would be proper herein. Section 1306 speaks of an award or settlement resulting from a civil action "brought" under the antitrust laws. The amount paid by the defendants in consideration of Gordon's relinquishment of his alleged cause of action did not result from the Pioneer suit or any other suit but from the defendant's knowledge of the agreement between Gordon and Cox and their desire to prevent Gordon's (d.b.a. Rialto) assertion of a separate claim at a later date.

Clearly, section 1306 does not apply where a taxpayer receives an amount from an alleged antitrust violator without having first instituted a civil action. To allow Gordon the benefit of section 1306

---

[4] There is nothing in the record before us to indicate that Gordon ever initiated antitrust proceedings against any parties for injuries sustained by Rialto.

[5] There is nothing to show that the Pioneer suit fixed, as a matter of law, Gordon's rights in a future action involving Rialto.

[6] Any recovery in a suit brought by Gordon for injuries to Rialto may have been subject to the agreement with Cox.

merely because of the agreement that he had with Cox would be unwarranted by the statute.

Petitioners argue in the alternative that they are entitled to relief under section 1305.[7] This argument is without merit. If the Pioneer suit could possibly be described as a civil action for breach of contract or breach of fiduciary duty or relationship (which we doubt), it was for a breach against Pioneer and not Rialto. *A fortiori*, the award therein would only be for a breach against Pioneer. Moreover, section 1305 is restricted to *awards* and does not cover settlements and thus we do not have to consider the additional $30,000 agreed to after the District Court's judgment on the verdict.

Petitioners argue that the legal expenses which they incurred in conjunction with the Pioneer suit should at least be deductible in the years paid (1957, 1960, 1961, and 1962). Neither we nor respondent has any quarrel with this contention; however, this Court has jurisdiction only over the year 1962 and cannot determine tax consequences for any other year.[8]

There is no merit to petitioners' argument that the *entire* amount of their legal expenses is deductible in 1962. First, petitioners are on the cash basis. Second, there were no contingencies regarding payment of the legal expenses. They were simply paid in the years in which they were incurred. Hence, there is no reason to postpone their deduction to the year 1962.

*Decision will be entered for the respondent.*

---

[7] Sec. 1305(a), I.R.C. 1954, provides:

GENERAL RULE.—If an amount representing damages is received or accrued by a taxpayer during a taxable year as a result of an award in a civil action for breach of contract or breach of a fiduciary duty or relationship, then the tax attributable to the inclusion in gross income for the taxable year of that part of such amount which would have been received or accrued by the taxpayer in a prior taxable year or years but for the breach of contract, or breach of a fiduciary duty or relationship, shall not be greater than the aggregate of the increases in taxes which would have resulted had such part been included in gross income for such prior taxable year or years.

[8] Respondent has already allowed the deduction for expenses paid in 1962. He also credited petitioners on their 1961 return for fees paid but not previously deducted in that year, creating an overassessment in 1961.