JULIAN A. SANDOVAL and ARMIDA T. SANDOVAL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sandoval v. Commissioner
Docket No. 11611-77.
United States Tax Court
T.C. Memo 1979-430; 1979 Tax Ct. Memo LEXIS 95; 39 T.C.M. (CCH) 377; T.C.M. (RIA) 79430; October 18, 1979, Filed A. Jerry Busby, for the petitioners. Harry Beckhoff, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: Respondent determined a deficiency of $5,665.00 in petitioners' Federal income tax for 1975. The only issue for our determination is whether *96 petitioners paid attorneys fees in 1975, thereby entitling them to a deduction in that year. This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference. At the time they filed their petition, petitioners resided at Tucson, Arizona. Petitioners timely filed a joint Federal income tax return for 1975 and used the cash method of accounting to compute their taxable income. On May 30, 1975, agents of the Federal Drug Enforcement Administration and the Tucson Metro Narcotics Squad seized $36,947.50 in cash belonging to the petitioners in connection with a series of narcotics trafficking arrests. Later that day, the District Director of Internal Revenue for the District of Arizona (hereinafter District Director) determined that the collection of petitioners' income tax for January 1, 1975 through May 29, 1975 was in jeopardy and terminated petitioners' tax year pursuant to section 6851. [1] Petitioners Julian A. Sandoval (hereinafter Julian) and Armida T. Sandoval (hereinafter Armida) were separately assessed in the respective amounts of $20,228.10 and $19,113.60 *97 for the terminated taxable period. With respect to these assessments, no statutory notices of deficiencies were issued. On May 30, 1975, moreover, following petitioners' failure or refusal to pay the assessed taxes after notice and demand for immediate payment, the District Director levied upon and subsequently received the $36,947.50 held by the Tucson Police Department. On July 14, 1975 the levy proceeds were equally divided and applied to petitioners' assessments for the terminated period. The District Director, in addition, seized Julian's pickup truck and motorcycle on June 5, 1975 and Armida's automobile on June 11, 1975. These items were sold at public auction and the proceeds from the sale ($700.00 for Julian and $680.00 for Armida) were applied, on June 26, 1975, against their respective assessments for the terminated period. On July 2, 1975 petitioners filed joint Federal income tax returns for 1974 and 1975. The return for 1974 indicated a total tax liability of $4,053.00 and was accepted by respondent. The return for the terminated *98 taxable period beginning January 1, 1975 and ending May 29, 1975, indicated a total tax liability of $11,904.00. On November 20, 1975, petitioners executed four documents. The first, a financing agreement, "Arizona Uniform Commercial Code Financing Statemnt-Form UCC-1," was executed with the law firm of Debus, Busby & Green, Ltd. (hereinafter D, B & G), and filed in the Office of the Secretary of State, State of Arizona, on November 24, 1975. The document lists petitioners as debtors, D, B. & G as the secured party, and "39,000 plus in United States currency" as the property covered by the statement. [2]
The second document, a fee agreement executed by petitioners and D, B & G, provided the following compensation for the latter's services: costs incurred plus either one-third (1/3) by any amount recovered if from the local authorities or fifty percent (50%) of all money recovered if the money had been turned over to the Internal Revenue Service. Included in the services *99 to be rendered by the law firm was a final acceptance by the Service of petitioners' 1974 and 1975 tax returns, either as filed or as eventually negotiated with the Service. The third document, denominated "Assignment" and executed by petitioners, purported to "assign and convey all right, title and interest to THIRTY-NINE THOUSAND PLUS DOLLARS ($39,000 plus) seized from the home * * * on or about May 29, 1975, to the law firm of DEBUS, BUSBY & GREEN, LTD." The last document executed on November 20, 1975 was an affidavit swearing that petitioners retained the law firm of D, B & G to acquire the over $39,000 "claimed by them and presently in the custody of the Department of Public Safety" and to act as their agent in this matter. On February 24, 1976, petitioners, with D, B & G and another law firm, Streich, Lang, Weeks, Cardon & French (hereinafter S, L, W, C & F), as attorneys of record, filed a class action [3] in the United States District Court in the District of Arizona. The District Court, on May 10, 1976, denied petitioners' motion for certification of class and, on June 14, 1976, further denied the defendant's motion for summary judgment. The litigation was ultimately *100 resolved by settlement and was dismissed with prejudice by the District Court on October 12, 1976. Pursuant to the terms of the settlement, of the $38,327.50 collected by the District Director, $8,328.61 was applied to petitioners' tax liabilities as reflected on their 1974 and 1975 income tax returns, and the balance plus interest was refunded to petitioners in September and October 1976. Under the settlement, moreover, the District Director retained the right to audit the joint Federal income tax return for 1975. On September 8, 1976 and on October 8, 1976, D, B & G received $12,500.00 and $1,258.87, respectively, from petitioners pursuant to their fee arrangement. On October 8, 1976, petitioners paid $6,198.64 to S, L, W, C & F for their legal services. D, B *101 & G reported the fees received from petitioners as income on the firm's corporate income tax return for the taxable year ending June 30, 1977. On August 22, 1977, respondent issued a deficiency notice to petitioners for 1975 disallowing a claimed deduction for legal fees of $19,914.00. [4]
Although conceding the legitimacy of the expense, respondent contends that the amounts paid by petitioners as legal fees were not deductible in 1975 since petitioners were cash basis taxpayers and the amounts were actually paid in 1976. He asserts that the assignment agreement executed in 1975 is not a payment of legal fees in that year. In addition, respondent maintains that even assuming arguendo that petitioners were in "constructive receipt" of the contingent claim in 1975, it does not follow that the doctrine of "constructive payment" applies with respect to the payment of legal fees in the same taxable year. Petitioners argue that, under state law, their assignment without reservation vested all title in the assignee, *102 and, therefore, that payment occurred in 1975 when all steps were taken to create an irrevocable obligation. Petitioners also assert that failure to follow jeopardy assessment procedures rendered respondent's conduct improper from the beginning and that respondent should not benefit from its own improper conduct. We agree with respondent. Respondent's determination of a deficiency is presumptively correct; petitioners have the burden of proving such determination is wrong. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Deductions, moreover, are matters of legislative grace and entitlement to them must be proved by the taxpayer. Interstate Transit Lines v. Commissioner,319 U.S. 590 (1943); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Although, as respondent concedes, petitioners are entitled to a deduction for legal expenses under section 212(3), they must establish that the legal fees were paid during 1975 to deduct them in that year. Section 212; section 1.212-1(a)(1), Income Tax Regs.
For cash basis taxpayers, payment of legal fees occurs only in the year *103 the costs are actually paid. Section 461(a); section 1.461-1(a)(1), Income Tax Regs.[5] The effect of this rule is to deny to both the Government and the taxpayer the option of attributing expenses to a year other than the year of actual payment. Security Flour Mills Co. v. Commissioner,321 U.S. 281 (1944). Since petitioners are cash basis taxpayers, they are plainly not entitled to a deduction in 1975 for legal fees actually paid in 1976. Estate of Gordon v. Commissioner,47 T.C. 462 (1967). Petitioners' main argument, that the assignment and fee agreement which were executed in 1975 constitute actual payment of their legal fees *104 in 1975, lacks merit. First, the amount under the fee agreement was ascertainable in 1975 only to the extent of $19,163.75 (50 percent of the property withheld by respondent). The amount attributable to "costs incurred" could not have constituted payment in 1975 where the litigation was not settled until 1976 and where the taxable year 1975 remained open and it was unclear what further costs would be incurred. Second, it was uncertain in 1975 whether petitioners had a valid claim. It was not until 1976 when the Supreme Court, in Laing v. United States,423 U.S. 161 (1976), held that the Internal Revenue Service was required to issue a deficiency notice to a taxpayer within sixty days after terminating his taxable year and the making of a jeopardy assessment. Moreover, even if their recovery of the money is somehow interpreted as certain at the time petitioners instituted their action, there was no certainty that petitioners would in fact pay their attorneys fees. While the law firm may have had an enforceable claim against petitioners, they could not be certain they would ever actually be paid. See Commissioner v. Blaine, Mackay, Lee Co.,141 F.2d 201 (3d Cir. 1944), *105 reversing a Memorandum Opinion of this Court. Likewise in Emmanuel v. Commissioner,28 T.C. 1305 (1957), we held that the assignment of a contingent claim does not constitute payment by the assignor when the assignee is not shown to have collected the claim in the same taxable year. Although it may be found that petitioners were in "constructive receipt" of the property wrongfully seized from them, it does not necessarily follow that they had made "constructive payment" of their legal fees. See Vander Poel, Francis & Co. v. Commissioner,8 T.C. 407 (1947). "Constructive receipt" is used to determine income and, as such, is intended as a means to tax all income; by contrast, "constructive payment" is used to effect a deduction and, since deductions are matters of legislative grace, is rarely applied. See 2 Mertens, Law of Federal Income Taxation, sec. 10.18, pp. 71-72 (1974 rev.). We sympathize with petitioners' position as it is apparent that the need for their attorneys' services in this matter was produced by the Government's impropriety. As we have repeatedly stated, however, we are not a court of equity, Commissioner v. Gooch Co.,320 U.S. 418 (1943); *106 Hays Corp. v. Commissioner,40 T.C. 436 (1963), affd. 331 F.2d 422 (7th Cir.) cert. denied, 379 U.S. 842 (1964); Ternovsky v. Commissioner,66 T.C. 695 (1976), and must reach our decisions solely on a legal, rather than equitable, basis. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable years in issue.↩
2. The actual amount of cash seized was $36,947.50. An additional amount of $1,380.00 was seized by the District Director so that by November 20, 1975, a total of $38,327.50 had been seized from petitioners.↩
3. The action was captioned: "Julian Angel Sandoval, and Armida Trejo Sandoval, his wife, on behalf of themselves and all other similarly situated persons, v. United States of America, William E. Simon, Secretary of the Treasury, Donald O. Alexander, Commissioner of the Internal Revenue Service, and Prescott A. Berry, the District Director of the Internal Revenue for the District of Arizona," CIV. 76-133 PHX WPC.↩
4. The total amount paid for legal services was actually $19,957.51. This discrepancy with the claimed deduction was not noted or explained by either party.↩
5. Section 461(a) provides as follows: The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income. Section 1.461-1(a)(1), Income Tax Regs., provides, in pertinent part, as follows: Under the cash receipts and disbursements method of accounting, amounts representing allowable deductions shall, as a general rule, be taken into account for the taxable year in which paid. * * *↩