MARTHA L. TRANQUILLI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tranquilli v. Commissioner
Docket No. 6863-76.
United States Tax Court
T.C. Memo 1980-10; 1980 Tax Ct. Memo LEXIS 571; 39 T.C.M. (CCH) 874; T.C.M. (RIA) 80010; January 17, 1980, Filed Martha L. Tranquilli, pro se. Alan Summers, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in petitioner's income tax, plus additions to the tax under section 6653(b)[1] for fraud, as follows: Year
Deficiency
Sec. 6653(b)
1970
$1,052 $526
1971
1,178
589
1972
1,396
698
1973
392
0
The issues for decision are: 1. Whether petitioner is entitled to deductions for charitable contributions for 1970, 1971 and 1972 in excess of the amounts allowed by respondent. 2. Whether petitioner is entitled to deductions for business *574 expenses for 1970 and 1971 in excess of the amounts allowed by respondent. 3. Whether petitioner is entitled to dependency exemptions in 1970, 1971 and 1972 for certain individuals and organization. 4. Whether petitioner is entitled to deductions for legal expenses in 1972 and 1973. 5. Whether any part of petitioner's underpayment of tax during 1970, 1971 and 1972 was due to fraud. 6. Whether the statute of limitations bars the assessment of the deficiencies for 1970, 1971 or 1972. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. At the time she filed her petition, petitioner was a resident of Sacramento, California. Petitioner filed timely returns in 1970, 1971, 1972 and 1973. She prepared these returns on the cash basis and in all of these years except 1973 she itemized her deductions. During the tax years in issue, petitioner was employed as a registered nurse in a community hospital in Mount Bayou, Mississippi. There she became actively involved in the affairs of the community, and joined a variety of organizations (including the National Council of Negro Women and the Jane Addams Peace Association). *575 Petitioner made cash contributions to various educational, civic and pacifist organizations in 1970, 1971 and 1972. These contributions amounted to $175 in 1970, $580 in 1971, and $185 in 1972. In addition, petitioner claimed charitable contributions of $120, $120 and $134 in 1970, 1971 and 1972, respectively, for automobile expenses incurred in transporting indigents to county welfare offices and to county health facilities. Petitioner provided this transportation service on her own initiative; it was not part of her job as a nurse nor was it performed in conjunction with the activities of a charitable organization. In 1972 petitioner also deducted $402 for transportation expenses incurred in traveling to meetings of the Jane Addams Peace Association of which organization she was a member of the advisory committee. Respondent determined that the expenses incurred in transporting indigents and in traveling to meetings of the Jane Addams Peace Association did not qualify as charitable contributions and disallowed these deductions. On her 1970 and 1971 returns petitioner deducted $168 as the cost of nurse's uniforms. In his statutory notice, respondent disallowed $103 *576 of the claimed amount for each year because of lack of substantiation. Petitioner claimed the following dependency exemptions for the years 1970, 1971 and 1972: [2]
Claimed Dependent
1970
1971
1972
Herself
claimed
claimed
claimed
American Civil Liberties
claimed
Claimed
claimed
Union
Women's International
claimed
claimed
claimed
League for Peace and
Freedom
American Friends Service
claimed
claimed
not claimed
Committee
International League for
claimed
claimed
claimed
the Rights of man
War Resisters' League
claimed
claimed
claimed
War Tax Resisters
claimed
claimed
claimed
Juanita
claimed
claimed
not claimed
Derrick
not claimed
not claimed
claimed
Eric
not claimed
not claimed
claimed
These dependents were clearly listed by petitioner on her returns. In 1970 and 1971 petitioner provided a part-time home and paid tuition expenses for Juanita, an unrelated student at a local teacher's college. In 1972 petitioner provided food and clothing for Juanita's nephews, Derrick and Eric; these children did not live with petitioner nor were they related *577 to petitioner. Petitioner claimed the various organizations as dependency exemptions as a means of voicing her opposition to the Vietnam conflict then in progress. [3]
During the taxable years in issue, petitioner knew that to claim someone as a dependency exemption that person must be a natural person and, if unrelated, must be a member of the taxpayer's household. In his statutory notice, respondent permitted petitioner only one exemption for herself and disallowed the other dependency exemptions claimed in 1970, 1971 and 1972. On March 21, 1973, a criminal indictment under section 7206(1) was filed against petitioner alleging that she had willfully subscribed, under *578 penalties of perjury, her United States individual income tax return for the taxable years 1970 and 1971 which she did not believe to be true and correct as to every material matter in that said returns contained claims for the exemption of six false dependents for each of the years. The six dependents noted were the organizations that petitioner had listed on the 1970 and 1971 returns. petitioner's trial took place before a judge and jury in the United States District Court, Northern District of Mississippi. The jury found her guilty with respect to both years and judgment was entered on May 15, 1973. [4]
In calculating her adjusted gross income for 1972 and 1973 petitioner deducted $1,500 and $5,268.51, respectively, for legal expenses relating to the criminal fraud proceedings. The $1,500 represented her attorney's fee which she paid in 1972. The $5,268.51 (which represented her estimate *579 of the wages she lost as a result of the trial) was deducted on her 1973 return under the heading "Cost of Court Trial." In his statutory notice, respondent disallowed these claimed amounts. OPINION 1. Charitable Contributions
Petitioner claimed deductions of $269.75 in 1970, $717.58 in 1971, and $207.00 in 1972 for cash contributions made to various educational, civic and pacifist organizations. Respondent disallowed a portion of these deductions due to lack of substantiation.[5] The burden is on petitioner to substantiate by good and competent evidence her claimed deductions. Welch v. Helvering, 290 U.S. 111 (1933). Petitioner testified as to the nature of her cash contributions in each of the three years. She did not, however, provide any clear evidence of the amount thereof or any documentary support for these contributions. Although we found her testimony to be generally credible, she did not prove the precise amounts contributed. Accordingly, we are forced to make an approximation, bearing heavily *580 against the taxpayer whose inexactitude is of her own making. Cohan v. Commissioner, 39 F. 2d 540 (2d Cir. 1930). Upon consideration of all the evidence, including her active participation in community affairs and her membership in some of the donee organizations, we conclude that petitioner is entitled to deduct $175 in 1970, $580 in 1971 and $185 in 1972. Petitioner also claimed deductions for expenses incurred (1) in transporting indigents to county welfare offices and to county health facilities and (2) in traveling to meetings of the June Addams Peace Association ("Association"). Respondent disallowed these deductions based on his determination (1) that petitioner's transportation services were "ad hoc" private charity which does not fall within the scope of section 170 and (2) that petitioner did not show the connection between her traveling expenses and the performance of services for the Association. We agree with respondent. In order to qualify as a charitable deduction, the contribution must be made to one of the organizations described in section 170(c), *581 see, e.g., Peace v. Commissioner, 43 T.C. 1 (1964); charitable contributions are not deductible if they are made to individuals rather than to qualified organizations. See Tilles v. Commissioner, 38 B.T.A. 545, 549-551 (1938), affd. 113 F. 2d 907 (8th Cir. 1940), cert. denied 311 U.S. 703 (1940). Unreimbursed transportation expenses are deductible if incurred in performing donated services for one of the organizations described in section 170(c). Sec. 1.170A-1(g), Income Tax Regs.
Petitioner is not entitled to a charitable contribution deduction for the cost of transporting indigents to county offices. She provided this transportation service to individuals on her own initiative and not pursuant to the activities of any qualified organization. furthermore, petitioner is not entitled to deduct the cost of traveling to meetings of the Association because she failed to introduce any evidence of the relationship between these trips and the performance of donated services. Furthermore, petitioner presented no evidence to substantiate the amounts claimed. 2. Business Expenses
*582 Petitioner deducted $168 on her 1970 and 1971 returns as the cost of her nurse's uniforms. Respondent determined that petitioner was entitled to deduct only $65 in each year; respondent disallowed the remaining amounts claimed on the basis that petitioner did not substantiate that such amounts were paid. Section 162(a) permits a deduction for ordinary and necessary business expenses which includes nurses' uniform expenses. McGovern v. Commissioner, 42 T.C. 1148, 1150 (1964), affd. by order (6th Cir. Apr. 20, 1966). Petitioner, however, presented no evidence about the claimed deductions. Accordingly, petitioner has failed to carry her burden of proof, Rule 142(a), Tax Court Rules of Practice and Procedure, and her claimed deductions in excess of the amounts previously allowed by respondent are disallowed. 3. Dependency Exemptions
Petitioner contends that she is entitled to dependency exemptions in 1970, 1971 and 1972 for sundry organizations, for an unrelated woman named Juanita, and for Juanita's two nephews. Respondent asserts that these organizations and *583 individuals do not qualify as petitioner's dependents under section 152(a) and, therefore, the dependency exemptions should be disallowed. We agree with respondent. Petitioner is entitled to a dependency exemption only for "dependents" as defined in section 152. Sec. 151(e). A dependent must be (1) an individual (2) over half of whose support was provided by petitioner and (3) if the individual is unrelated to petitioner, that individual must have petitioner's home as his principal place of abode. Sec. 152(a). The burden of proof with respect to each of these elements is on petitioner. Rule 142(a), Tax Court Rules of Practice and Procedure. None of the organizations claimed as dependents by petitioner qualify as "individuals" and, therefore, these exemptions are disallowed. Furthermore, Juanita's two nephews (who never lived with petitioner) did not use petitioner's home as their "principal place of abode." These exemptions are also disallowed. Finally, petitioner introduced no evidence as to either the amount of support she provided Juanita in 1970 and 1971 or the total amount *584 of support Juanita received from all sources in 1970 and 1971. All we know is that Juanita was a student and a part-time resident of petitioner's household. This is insufficient evidence to carry petitioner's burden of proof and, accordingly, this exemption is also disallowed. See Stafford v. Commissioner, 46 T.C. 515, 518 (1966). 4. Legal Expenses The next question is whether certain deductions petitioner claims are connected with her conviction for criminal fraud under section 7206(1) are deductible as legal expenses. Petitioner contends that $1,500 in attorney fees and $5,268.51 for estimated lost wages are deductible as legal expenses in 1972 and 1973, respectively. Respondent concedes that attorney's fees arising from criminal charges under section 7206(1) are deductible under section 212(3); [6] however, respondent disputes the deductibility of these fees in 1972. On the other hand, respondent asserts that estimated lost wages are not deductible as legal expenses. *585 For cash basis taxpayers like petitioner, legal expenses are deductible in the year of payment. See Estate of Gordon v. Commissioner, 47 T.C. 462, 466 (1967); sec. 1.461-1(a)(1), Income Tax Regs. Petitioner bears the burden of proving the amount paid and the year in which it was paid. Welch v. Helvering, 290 U.S. 111 (1933). Petitioner asserted that she paid her attorney $1,500 in 1972. She did not provide any documentary support for this assertion. Nonetheless, we found petitioner's testimony to be forthright and credible and, accordingly, are satisfied that the $1,500 payment occurred in 1972. Petitioner, however, is not entitled to the $5,268.51 deduction claimed in 1973. This amount merely represents income foregone as a result of the trial and does not constitute expenditures made on behalf of her defense. Only the latter are deductible as legal expenses. 5. Fraud Issue
Respondent has determined that petitioner is liable for additions to tax for fraud (section 6653(b)) [7] for 1970, 1971 and 1972 because she claimed dependency exemptions for various organizations in those years. *586 The existence of fraud is a question of fact to be determined upon consideration of the entire record. Stratton v. Commissioner, 54 T.C. 255, 284 (1970). For fraud to be present, we must find that petitioner acted with the specific intent to evade a tax believed to be owing. Mitchell v. Commissioner, 118 F. 2d 308, 310 (5th Cir. 1941). Respondent has the burden of proving by clear and convincing evidence that petitioner is liable for additions to tax for fraud. Sec. 7454(a); Rue 142(b), Tax Court Rules of Practice and Procedure. Respondent must establish fraud for each individual year in issue. Stone v. Commissioner, 56 T.C. 213, 220 (1971). This burden may be met with circumstantial evidence, Powell v. Granquist, 252 F. 2d 56, 61 (9th Cir. 1958), but fraud is never presumed or imputed. Switzer v. Commissioner, 20 T.C. 759, 765 (1953). With respect to the years 1970 and 1971, respondent contends that petitioner's conviction under section 7206(1) for willfully filing a false and fraudulent return conclusively satisfies respondent's burden of proof as to petitioner's fraudulent intent *587 under section 6653(b); therefore, respondent asserts that he need only demonstrate that petitioner's fraudulent representations resulted in an underpayment of tax. Respondent relies on Considine v. Commissioner, 68 T.C. 52 (1977), to support his position that petitioner's conviction under section 7206(1) collaterally estops her from denying that she intended to evade taxes by claiming dependency exemptions for various organizations. For the reasons stated below, we agree with respondent's application of collateral estoppel to the years 1970 and 1971. In Considine v. Commissioner, supra, the taxpayer's conviction under section 7206(1) resulted from his failure to report a specific item of capital gain. The only allegation of error in the taxpayer's return in the criminal case was this omission. Based on these facts, we held that the taxpayer was estopped from denying that he omitted income from his return or that he intended to evade taxes by this omission. We have recently had the opportunity to reconsider this view of collateral estoppel in Goodwin v. Commissioner , 73 T.C.     (Oct. 31, 1979) (Court reviewed). In Goodwin *588 the taxpayer pleaded guilty to an indictment under section 7206(1) for willfully subscribing to returns known or believed to be incorrect in that income was omitted. The omission of income was the only allegation on which the indictment was based. We followed Considine, supra, in holding that the taxpayer in Goodwin was collaterally estopped from denying that he omitted income from his returns or that such omissions were made with the intent to evade taxes. In both Considine and Goodwin the taxpayers' convictions under section 7206(1) estopped them from denying the existence of two of the three elements required to be proved under section 6653(b), i.e., an intentional wrongdoing and the requisite intent. As a result, respondent's burden of proof in those cases was reduced to demonstrating that the omitted items of income resulted in an underpayment of tax. The only allegation of willful misrepresentation mentioned in petitioner's indictment for violating section 7206(1) is that she claimed dependency exemptions for various organizations in 1970 and 1971. Based on her conviction on these charges and the application of Considine and Goodwin, we hold *589 that petitioner wrongfully claimed dependency exemptions for certain organizations on her 1970 and 1971 returns and that she did so with the intent to evade taxes. Respondent must still prove, however, that the wrongfully claimed dependency exemptions resulted in an underpayment of petitioner's taxes in 1970 and 1971. Petitioner does not contend that she is entitled to any deductions or exemptions other than those which appear on her 1970 and 1971 returns contained in the record; nor have we determined that any deductions or exemptions not shown on the returns are allowable. Furthermore, petitioner does not contend that the gross income reported on her returns was overstated. It is therefore obvious from the record as a whole that petitioner's claiming these organizations as dependency exemptions created an underpayment of her taxes in 1970 and 1971 and, accordingly, we sustain respondent's assessment of the fraud penalty for those years. Respondent contends that the fraud penalty under section 6653(b) should also be assessed for 1972 because petitioner claimed five organizations as dependents. [8] Respondent, however, may not rely upon collateral estoppel with respect to *590 1972 because petitioner was neither charged nor convicted of violating section 7206(1) in that year. Nonetheless, respondent argues that he has presented clear and convincing evidence of each requirement of section 6653(b). For the reasons stated below, we do not agree. Respondent points to two facts in support of his assessment of the fraud penalty for 1972. These are (1) petitioner's awareness of the requirements for claiming dependency exemptions at the time she prepared her 1972 return, and (2) petitioner's awareness prior to preparing her 1972 return that a criminal indictment had been filed against her for claiming certain organizations as dependents in 1970 and 1971. While we agree that these facts clearly indicate the intentional and willful nature of petitioner's error in claiming these exemptions, these facts do not provide clear and convincing proof that petitioner's intent in claiming these exemptions was to evade taxes. Rather, the facts in this *591 case demonstrate that petitioner's intent was not to evade taxes. Petitioner's testimony indicates that her sole motivation in claiming the exemptions for these organizations was to protest the Government's activities in Vietnam. Petitioner's situation here is analogous to that presented in Muste v. Commissioner, 35 T.C. 913 (1961). In Muste, the taxpayer wrote letters to the Internal Revenue Service notifying the Service that he did not intend to file income tax returns. These letters were written each year and were always mailed prior to the filing date for the taxpayer's none-existent return. The letters expressed the taxpayer's aversion to the use of federal funds for war and preparation for war. In holding that the taxpayer in Muste was not liable for additions to tax on account of fraud under the predecessor of section 6653(b), we stated: Here the evidence shows that the petitioner did not attempt to conceal from the respondent the fact that he had earnings; rather, he advised the respondent at the time for filing of the returns for each of the years in question that he did not intend to file returns and stated his reasons. His failure to file *592 returns and thus advise the respondent of the amount of his income was due entirely to his sincere belief that he should not file returns and pay taxes, since he was averse to the use of Federal funds for war and preparation for war. At the time for filing returns he advised the respondent's representatives that he was willing to talk with them and he thereafter cooperated fully with them in their investigation. We are completely satisfied that there was not on the part of the petitioner any bad faith, intentional wrongdoing, sinister motive, or intent to mislead or deceive the respondent. Under these circumstances it is our conclusion, and we have found as a fact, that no part of the deficiency in tax for any year in question was due to fraud with intent to evade tax. 35 T.C. at 921. There are several similarities between petitioner's situation and that of the taxpayer in Muste. First, petitioner listed the initials of the organizations she claimed as dependents on the face of her return. Although the letters were not set off by periods, it is clear that the initials WILF, WTR, WRL, ILRM and ACLU represent the names of organizations. [9] The openness with *593 which petitioner claimed these erroneous exemptions is tantamount to directly notifying respondent of her actions. The success of this communication is evident from respondent's audit of petitioner's return. Second, petitioner testified that she "claimed the organizations as dependents in protest against the war, and the Federal Government taking [her] money without [her] consent for war purposes and for the Pentagon." We found petitioner to be sincere in her beliefs and respondent does contend otherwise. Third, respondent offered no evidence that petitioner did not fully cooperate with him in the course of the audit. In the absence of such evidence we assume that petitioner fully cooperated. Under these circumstances, we find Muste controlling and conclude that respondent has not provided clear and convincing proof that petitioner acted with the intent to evade taxes. [10] Although the tax system should not be used as a means of political protest, we may not presume the intent necessary to assess the penalty prescribed under section 6653(b). See Iley v. Commissioner, 19 T.C. 631, 635 (1952). *594 Our holding is not meant to imply that a protest action such as petitioner's is not ever evidence of fraud. Cf. Powell v.Granquist, 252 F. 2d 56 (9th Cir. 1958), in which the taxpayer failed to file tax returns for nine consecutive years. The taxpayer in Powell purportedly did not file these returns because "he did not approve of the manner in which the money was spent by the government, that he considered the government wasteful." Id. at 58. These feelings were expressed only after respondent had begun investigating the absence of the returns. Moreover, the taxpayer had been uncooperative with the Internal Revenue agents during their investigation. On these facts respondent's assessment of the fraud penalty under the predecessor of section 6653(b) was upheld. 5. Statute of Limitations
Petitioner contends that respondent is barred by the statute of limitations from assessing and collecting the 1970, 1971 and 1972 deficiencies. The three-year statute of limitations under section 6501 does not apply to a false or fraudulent return filed with the intent to evade tax. Sec. 6501(c)(1). Petitioner filed fraudulent returns in *595 1970 and 1971 with the intent to evade tax and, consequently, the statute of limitations present no barrier to the assessment and collection of the deficiencies relating to those years. Generally, the three-year statute of limitations under section 6501 begins to run on the latter of the actual filing date of the taxpayer's return or the due date of the return. Sec. 6501(a) and (b). The mailing of a statutory notice of deficiency suspends the running of the statute of limitations as of the date it is mailed, even if it is not received by the taxpayer until after the three-year deadline. Sec. 6503(a)(1); sec. 301.6503(a)-1(a), Proced. & Admin. Regs.; Whirlpool Corporation v. Commissioner, 61 T.C. 182 (1973). The burden of providing the expiration of the statutory period is on the taxpayer. Refiners Production Co. v. Commissioner, 43 B.T.A. 481, 492 (1941). Petitioner filed a timely return for 1972; therefore, she must prove that respondent did not mail his statutory notice on or before April 16, 1976. [11] The statutory notice received by petitioner *596 bore the date of April 15, 1976. Petitioner introduced no evidence at trial indicating that the mailing of the statutory notice did not occur on this date and, accordingly, we find that the statutory notice suspended the running of the statute of limitations. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. Petitioner claimed one dependency exemption in 1969 and 1973.↩
3. Petitioner's explanation of her actions was as follows: I claimed organizations as dependents in protest against the war, and the Federal Government taking my money without my consent for war purposes and for the Pentagon. And I felt that these organizations--they are not hidden by any means. A.C.L.U., W.I.L.P.F., the American "Friends" Service Committee. These are all familiar organizations of a peace nature. I prefer to support this kind of thing rather than Pentagon or the Pentagon activities.↩
4. United States v. Tranquilli was an unreported decision, criminal docket number CRD7330-K. Petitioner appealed the conviction; the Fifth Circuit affirmed, 488 F. 2d 1406 (5th Cir. 1974). The Spreme Court denied certiorari on June 17, 1974. 417 U.S. 971↩.
5. The amounts allowed by respondent were $94.00 in 1970, $257.00 in 1971, and $147.00 in 1972. Respondent does not contend that the organizations listed by petitioner are not qualified donees.↩
6. Respondent cites Rev. Rul. 68-662, 1968-2 C.B. 69↩, as the basis for this concession.
7. Section 6653(b) provides: (b) FRAUD.--If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *↩
8. Respondent does not argue any basis for asseting the fraud penalty other than petitioner's claim to dependency exemptions for the five organizations. Accordingly, this is the only ground for fraud we address.↩
9. These initials represent the following organizations: Women's International League for Peace and Freedom, War Tax Resisters, War Resisters' League, International League for the Rights of Man and the American Civil Liberties Union. ↩
10. We note that respondent did not alternatively assess the five percent penalty for intentional disregard of rules and regulations under section 6653(a)↩.
11. The due date for 1972 individual tax returns was April 15, 1973. This date, however, fell on a Sunday and, accordingly, the due date automatically became April 16, 1973. Sec. 7503.↩